# EXHIBIT A

[redacted]

# ADJUSTABLE-RATE NOTE
## HOME EQUITY CONVERSION

**(LIBOR One-Month Index (As Published In The Wall Street Journal)-Rate Caps)**

**NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE. THIS NOTE LIMITS THE MAXIMUM RATE I MUST PAY.**

**Commonwealth of Pennsylvania**

Date: **January 30, 2009**
Property Address: **1719 NORTH 29TH STREET, PHILADELPHIA, PA 19121**

**1. DEFINITIONS**

"Borrower" means each person signing at the end of this Note. "Lender" means **World Alliance Financial Corp.** and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for amounts to be advanced by Lender to or for the benefit of Borrower, including future advances up to a maximum principal amount of **$90,000.00**, under the terms of a Home Equity Conversion Loan Agreement dated **January 30, 2009** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on **March 05, 2071**. Interest will be charged on unpaid principal at the rate of **THREE AND 151/1000** percent (**3.151%**) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment-in-full, as provided in Paragraph 7 of this Note.

**(B) Place**

Payment shall be made at: **World Alliance Financial Corp., 3 Huntington Quadrangle, Suite 201N, Melville, NY 11747** or any such other place as Lender may designate in writing by notice to Borrower.

**(C) Limitation of Liability**

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**5. INTEREST RATE CHANGES**

**(A) Change Date**

The interest rate may change on the first day of **April, 2009**, and on [ ] that day of each succeeding year **[X]** the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

**(B) The Index**

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the interbank offered rates for one month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. "Current Index" means the most recent Index figure available 30 days before the Change Date, and if the day that is 30 days before the Change Date is not a Sunday or Monday and not the first business day of the week, the Current Index will be the Index as published the first business day of that week. If the day that is 30 days before the Change Date is a Sunday or Monday and not the first busines day of the week, the Current Index will be the Index as published the first business day of the immediately prior week.. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **TWO AND 750/1000** percentage points (**2.750%**) to the current Index. Subject to the limits stated in Paragraph 5(D) of

[redacted]

this Note, this amount will be the new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

[ ] The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

**[X]** The interest rate will never increase above **THIRTEEN AND 151/1000** percent **(13.151%)**.

**(E) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

**6. BORROWER'S RIGHT TO PREPAY**

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

*First*, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

*Second*, to that portion of the principal balance representing aggregate payments for servicing fees;

*Third*, to that portion of the principal balance representing accrued interest due under the Note; and

*Fourth*, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

**7. IMMEDIATE PAYMENT-IN-FULL**

**(A) Death or Sale**

Lender may require immediate payment-in-full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) A Borrower conveys all of his or her title to the Property and no other Borrower retains title to the Property in fee simple or on a leasehold interest as set forth in 24 CFR 206.45(a).

**(B) Other Grounds**

Lender may require immediate payment-in-full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment-in-full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary,

or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**8. WAIVERS**

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at an different address if Borrower is given a notice of that different address.

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**11. RELATIONSHIP TO SECOND NOTE**

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii). The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

(ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

**12. SHARED APPRECIATION (If Applicable)**

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Date: 1-30-09

Alberta Morgan Taylor (Seal)
Borrower- ALBERTA MORGAN TAYLOR

[redacted] [redacted]

FHA Case No. [redacted]

# ADJUSTABLE-RATE SECOND NOTE
# HOME EQUITY CONVERSION

**(LIBOR One-Month Index (As Published In The Wall Street Journal)-Rate Caps)**

**NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE. THIS NOTE LIMITS THE MAXIMUM RATE I MUST PAY.**

**Commonwealth of Pennsylvania**

Date: **January 30, 2009**
Property Address: **1719 NORTH 29TH STREET, PHILADELPHIA, PA 19121**

**1. DEFINITIONS**

"Borrower" means each person signing at the end of this Note. "Secretary" or Lender means the Secretary of Housing and Urban Development or his or her authorized representatives.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for amounts to be advanced by Lender to or for the benefit of Borrower, including future advances up to a maximum principal amount of **$90,000.00**, under the terms of a Home Equity Conversion Loan Agreement dated **January 30, 2009** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made by Lender under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on **March 05, 2071**. Interest will be charged on unpaid principal at the rate of **THREE AND 151/1000** percent (**3.151%**) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" or the "Second Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note. Borrower also executed a First Security Instrument and First Note when the Second Security Instrument and this Note were executed.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment-in-full, as provided in Paragraph 7 of this Note.

**(B) Place**

Payment shall be made at the Office of the Housing – FHA Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 7th Street, SW, Washington, DC 20410, or any such other place as Lender may designate in writing by notice to Borrower.

**(C) Limitation of Liability**

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property").

**5. INTEREST RATE CHANGES**

**(A) Change Date**

The interest rate may change on the first day of **April, 2009**, and on [ ] that day of each succeeding year **[X]** the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

**(B) The Index**

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the interbank offered rates for one month U.S. dollar-denominated deposits in the London market ("*LIBOR*"), as *published* in *The Wall Street Journal*. "Current Index" means the most recent Index figure available 30 days before the Change Date, and if the day that is 30 days before the Change Date is not a Sunday or Monday and not the first business day of the week, the Current Index will be the Index as published the first business day of that week. If the day that is 30 days before the Change Date is a Sunday or Monday and not the first business day of the week, the Current Index will be the Index as published the first business day of the immediately prior week.. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **TWO AND 750/1000** percentage points (**2.750%**) to the current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

[ ] The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

[X] The interest rate will never increase above **THIRTEEN AND 151/1000** percent (13.151%).

**(E) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

**6. BORROWER'S RIGHT TO PREPAY**

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of this Note and then to reduce the principal balance of the First Note.

All prepayments of the principal balance shall be applied by Lender as follows:

*First*, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

*Second*, to that portion of the principal balance representing aggregate payments for servicing fees;

*Third*, to that portion of the principal balance representing accrued interest due under the Note; and

*Fourth*, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

**7. IMMEDIATE PAYMENT-IN-FULL**

**(A) Death or Sale**

Lender may require immediate payment-in-full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) A Borrower conveys all of his or her title to the Property and no other Borrower retains title to the Property in fee simple or on a leasehold interest as set forth in 24 CFR 206.45(a).

**(B) Other Grounds**

Lender may require immediate payment-in-full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment-in-full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**8. WAIVERS**

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given the Secretary a notice of Borrower's different address.

Any notice that must be given to the Secretary under this Note will be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary.

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**11. RELATIONSHIP TO FIRST NOTE**

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant this Note to the Secretary.

**(B) Relationship of Secretary Payments to First Note**

Payments made by the Secretary shall be included in the debt due under this Note unless:

(i) The First Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt under the First Note.

**(C) Notice of Interest Rate Adjustments**

Borrower agrees that as long as the holder of the First Note continues to make Loan Advances, any notice of interest rate adjustment given to Borrower under Paragraph 5(E) of the First Note shall also be considered to be notice to Borrower under Paragraph 5(E) of this Note, so that the same interest rate shall apply for the First Note and this Note.

**12. SHARED APPRECIATION (If Applicable)**

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Date: 1-30-09

Alberta Morgan Taylor (Seal)
Borrower- **ALBERTA MORGAN TAYLOR**

Note Allonge

[redacted]

Borrower: ALBERTA MORGAN TAYLOR, SURVIVING SPOUSE
Property Address: 1719 NORTH 29TH STREET, PHILADELPHIA, PENNSYLVANIA 19121
Loan Amount: $90,000.00

For the purpose of endorsement of the attached Note, this Allonge is affixed and becomes a permanent part of said Note.

Pay to the order of:

SECRETARY OF HOUSING AND URBAN DEVELOPMENT, without recourse

REVERSE MORTGAGE SOLUTIONS, INC.

By: ____________________
Name: CATHY WILLIAMS
Title: SENIOR VICE PRESIDENT

[redacted]

# Note Allonge

[redacted]
Note Dated: 1/30/2009
Borrower: ALBERTA MORGAN TAYLOR, SURVIVING SPOUSE
Property Address: 1719 NORTH 29TH ST, PHILADELPHIA, PA 19121
Loan Amount: $90,000.00
Note Date: 1/30/2009

For the purpose of NoteHolder endorsement to evidence a transfer of interest of the attached Note, this Allonge is affixed and becomes a permanent part of said Note

Pay to the order of:

**Wilmington Savings Fund Society, FSB as Owner Trustee of CFS15 Grantor Trust**, without recourse

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY AND THROUGH ITS ATTORNEY IN FACT, ROCKTOP TECHNOLOGIES, LLC**

By: ________________
Name: John Zarrillo
Title: AUTHORIZED AGENT

[redacted]

M12
FNMA

~~After Recording Return To~~:
World Alliance Financial Corp.
3 Huntington Quadrangle, Suite 201N
Melville, NY 11747

[redacted]

52024465
Page: 1 of 12
02/13/2009 01:11PM

RETURN TO: MISSY DOMINGUEZ
LENDER RECORDING SERVICES
25221 COUNTRY CLUB BLVD. #235
NORTH OLMSTED, OHIO 44070
440-716-1820

Prepared By: Liz Maganna
World Alliance Financial Corp.
3 Huntington Quadrangle, Suite 201N
Melville, NY 11747

This Document Recorded
02/13/2009
01:11PM
Doc Code: M

Doc Id: 52024465
Receipt #: 775630
Rec Fee: 126.50
Commissioner of Records, City of Philadelphia

LRSA 940260(A) Space Above This Line For Recording Data

**Commonwealth of Pennsylvania**
Parcel ID Number:

FHA Case Numbe[redacted]

## ADJUSTABLE RATE OPEN-END
## HOME EQUITY CONVERSION MORTGAGE
### THIS MORTGAGE ("SECURITY INSTRUMENT") SECURES FUTURE ADVANCES

THIS MORTGAGE ("Security Instrument") is given on **January 30, 2009** ("Date"). The mortgagor is: **ALBERTA MORGAN TAYLOR, SURVIVING SPOUSE** whose address is: **1719 NORTH 29TH STREET, PHILADELPHIA, PA 19121** ("Borrower"). This Security Instrument is given to: **World Alliance Financial Corp.** which is organized and existing under the laws of **THE STATE OF NEW YORK**, and whose address is **3 Huntington Quadrangle, Suite 201N, Melville, NY 11747** ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **NINETY THOUSAND AND NO/100** (U.S. **$90,000.00**); (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in **PHILADELPHIA** County, Pennsylvania:

[redacted] [redacted]

**See Legal Description Attached**

which has the address of: **1719 NORTH 29TH STREET, PHILADELPHIA, PA 19121** ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

   In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the

restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan

Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate, (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than 12 consecutive months, a Borrower fails to occupy the

Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

**(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph 9 (a)(ii) and (b) occur.

**(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed-in-lieu of foreclosure.

**(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment-in-full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate

[redacted] [redacted]

payment-in-full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment-in-full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one more of the actions set forth above within 10 days of the giving of notice.

13. **Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

    If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

    Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

    Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender at its option may foreclose this Security Instrument by judicial proceeding. Lender**

**shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made., regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **3.151%** which accrues on the principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the interbank offered rates for one month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published on the first business day of each week in the "Money Rates" section of *The Wall Street Journal*("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any Index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **April, 2009**, and on **[ ]** that day of each succeeding year **[X]** the first day of each succeeding month ("Change Date") until the loan is paid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the ("Calculated Interest Rate") for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date ("the Existing Interest Rate").

**[ ] Annually Adjusting Variable Rate Feature** The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

**[X] Monthly Adjusting Variable Rate Feature** The Calculated Interest Rate will never increase above **THIRTEEN AND 151/1000** Percent (**13.151** %)

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument

[redacted] [redacted]

and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers**. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period**. Borrower's time to reinstate provided in Paragraphs 9 and 11 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Interest Rate After Judgment**. Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

27. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[ ] Condominium Rider
[ ] Shared Appreciation Rider
[ ] Planned Unit Development Rider
[ ] Other [Specify]

**Notice to borrower: this document contains provisions for a variable interest rate.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Alberta Morgan Taylor (Seal)
Borrower- **ALBERTA MORGAN TAYLOR**

Space Below This Line for Acknowledgement

COMMONWEALTH OF PENNSYLVANIA, Philadelphia County ss:

On this, the 30th day of January, 2009, before me, the undersigned officer,

personally appeared Alberta Morgan Taylor

satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the written instrument and acknowledged that he/she/they executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereuntop set my hand and official seal.

My commission expires: 6/30/10

Signature of Notary

Notary Public

Title of Officer

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DAI C. MEEKS, Notary Public
City of Philadelphia, Phila. County
My Commission Expires June 30, 2010

**CERTIFICATE OF RESIDENCE**

I, Liz Magallon
Agent of Lender

do hereby certify that the precise address of the within-named lender is:

Witness my hand this 4 day of February 2009

Signature of Agent of Lender

# EXHIBIT A

**THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE COUNTY OF PHILADELPHIA, AND COMMONWEALTH OF PENNSYLVANIA, TO WIT:**

**ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED.**

**SITUATE ON THE EAST SIDE OF TWENTY-NINTH STREET AT THE DISTANCE OF ONE HUNDRED AND THIRTY-FIVE FEET EIGHT INCHES NORTHWARD FROM THE NORTH SIDE OF COLUMBIA AVENUE IN THE 29TH WARD OF THE CITY OF PHILADELPHIA.**

**CONTAINING IN FRONT OR BREADTH ON THE SAID TWENTY-NINTH STREET FOURTEEN FEET ELEVEN AND ONE-HALF INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH EASTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID TWENTY-NINTH STREET SIXTY-FIVE FEET TO A CERTAIN THREE FEET WIDE ALLEY LEADING NORTHWARD FROM THE SAID COLUMBIA AVENUE TO MONTGOMERY AVENUE.**

**TAX ID #: 324177500**

**BEING ALL AND THE SAME LANDS AND PREMISES CONVEYED TO CLAUDE TAYLOR AND ALBERTA MORGAN TAYLOR, HIS WIFE, AS T/E BY RALPH HELLER IN A DEED EXECUTED 12/17/1956 AND RECORDED 12/18/1956 IN BOOK 457, PAGE 342 OF THE PHILADELPHIA COUNTY, PENNSYLVANIA LAND RECORDS**

[redacted]

**Effective Date: 04/01/2010**

**Page 1**

**ASSIGNMENT OF MORTGAGE**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **World Alliance Financial Corp., WHOSE ADDRESS IS 3 HUNTINGTON QUADRANGLE SUITE 201N, MELVILLE, NY 11747, (ASSIGNOR),**, by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **RESIDENTIAL MORTGAGE SERVICES, INC., WHOSE ADDRESS IS 2727 Spring Creek Drive, Spring, TX 77373, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said mortgage dated 01/30/2009 in the amount of $90,000.00 made by **ALBERTA MORGAN TAYLOR** to **WORLD ALLIANCE FINANCIAL CORP.** recorded on 02/13/2009, in the Office of the Recorder of Deeds of PHILADELPHIA County, Pennsylvania, in Book , Page (or Document No.52024465)

Mortgage Premise:1719 NORTH 29TH STREET
PHILADELPHIA, PA 19121

In Witness whereof, the said Corporation has caused this instrument to be executed in its corporate name by BRYAN BLY its VICE PRESIDENT and authorized signer, this 23rd day of April in the year 2010
**World Alliance Financial Corp.**

**By:**________________________
**BRYAN BLY VICE PRESIDENT**

[redacted]

[redacted]

52216460
**Page: 1 of 4**
05/27/2010 10:08AM

This Document Recorded
05/27/2010
10:08AM
Doc Code: A

Doc Id: 52216460
Receipt #: 906279
Rec Fee 168.00
Commissioner of Records, City of Philadelphia

form5/FRMPH1

A 4

[redacted]
Effective Date: 04/01/2010

ASSIGNMENT OF MORTGAGE Page 2

STATE OF FLORIDA COUNTY OF PINELLAS
On 04/23/2010, before me, CHRISTOPHER JONES the Undersigned, Notary Public, personally appeared BRYAN BLY, who acknowledged him/herself to be the VICE PRESIDENT of World Alliance Financial Corp. a corporation, and that s/he as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by themselves as such corporate officers.
IN WITNESS WHEREOF, I hereunto set my hand and official seal.

CHRISTOPHER JONES Notary Public
My commission expires: 08/03/2012

Christopher Jones
Notary Public, State of Florida
Commission # DD 811078
Expires August 03, 2012
Bonded Through National Notary Assn.

I ____________, do certify that the address of the above assignee is:
RESIDENTIAL MORTGAGE SERVICES, INC., WHOSE ADDRESS IS 2727 Spring Creek Drive, Spring, TX 77373, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

**Prepared by:**
**Jessica Fretwell/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

Return To:
World Alliance Financial Corp.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

[redacted] Page 3

Assignment of Mortgage from:
World Alliance Financial Corp., WHOSE ADDRESS IS 3 HUNTINGTON QUADRANGLE SUITE 201N, MELVILLE, NY 11747, (ASSIGNOR),
to:
RESIDENTIAL MORTGAGE SERVICES, INC., WHOSE ADDRESS IS 2727 Spring Creek Drive, Spring, TX 77373, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Mortgagor: ALBERTA MORGAN TAYLOR

When Recorded Return To:
World Alliance Financial Corp.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

All that certain lot or piece of ground situated in
Mortgage Premise: 1719 NORTH 29TH STREET
PHILADELPHIA, PA 19121
PHILADELPHIA
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said mortgage.

SEE ATTACHED EXHIBIT A

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE COUNTY OF PHILADELPHIA, AND COMMONWEALTH OF PENNSYLVANIA, TO WIT:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED.

SITUATE ON THE EAST SIDE OF TWENTY-NINTH STREET AT THE DISTANCE OF ONE HUNDRED AND THIRTY-FIVE FEET EIGHT INCHES NORTHWARD FROM THE NORTH SIDE OF COLUMBIA AVENUE IN THE 29TH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID TWENTY-NINTH STREET FOURTEEN FEET ELEVEN AND ONE-HALF INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH EASTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID TWENTY-NINTH STREET SIXTY-FIVE FEET TO A CERTAIN THREE FEET WIDE ALLEY LEADING NORTHWARD FROM THE SAID COLUMBIA AVENUE TO MONTGOMERY AVENUE.

TAX ID #: 324177500

BEING ALL AND THE SAME LANDS AND PREMISES CONVEYED TO CLAUDE TAYLOR AND ALBERTA MORGAN TAYLOR, HIS WIFE, AS T/E BY RALPH HELLER IN A DEED EXECUTED 12/17/1956 AND RECORDED 12/18/1956 IN BOOK 457, PAGE 342 OF THE PHILADELPHIA COUNTY, PENNSYLVANIA LAND RECORDS

eRecorded in Philadelphia PA Doc Id: 52780707
05/13/2014 10:14AM Receipt#: 1363243
Page 1 of 3 Rec Fee: $203.00
Commissioner of Records Doc Code: A
State RTT: Local RTT:

Prepared by, Recording Requested By and Return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928
[redacted]

# ASSIGNMENT OF MORTGAGE

FHA Case Number: [redacted]

**FOR AND IN CONSIDERATION** of Ten dollars ($10.00) and other value received, the undersigned **REVERSE MORTGAGE SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS** , whose address is 2727 Spring Creek Drive, Spring, TX 77373, does hereby assign, transfer, convey, set over, and deliver to:

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT, ITS SUCCESSORS AND ASSIGNS**, forever without recourse, whose address is 451 Seventh Street. S.W., Washington, DC 20410,

The following described Mortgage
Dated: **1/30/2009**
Executed by: **ALBERTA MORGAN TAYLOR, SURVIVING SPOUSE**
Payable to: **WORLD ALLIANCE FINANCIAL CORP.**
Amount of Debt: **$90,000.00**
Recorded: **2/13/2009**
Recording Information: At Document Number **52024465**
Recording Jurisdiction: **PHILADELPHIA** County Clerk's Office, State of **PENNSYLVANIA**.

Property Address: 1719 NORTH 29TH STREET, PHILADELPHIA, PENNSYLVANIA 19121
Legal Description: SEE ATTACHED EXHIBIT "A"

Parcel: 324177500
Township: 29TH WARD CITY OF PHILADELPHIA
I certify that the address of the within named assignee is 451 Seventh Street. S.W., Washington, DC 20410

C Hart
C. Hart

Executed this May 7, 2014.

**REVERSE MORTGAGE SOLUTIONS, INC.**

Lynette Sneed
By: LYNETTE SNEED
Title: ASSISTANT VICE PRESIDENT

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on May 7, 2014 by LYNETTE SNEED the ASSISTANT VICE PRESIDENT of REVERSE MORTGAGE SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS, a Delaware Corporation on behalf of said corporation.

______________________________
Notary Public in and for the State of Texas
Notary's Printed Name: Crystal Villasenor
My Commission Expires: 12-12-15

CRYSTAL ANN VILLASENOR
Notary Public, State of Texas
My Commission Expires
December 12, 2015

For $90,000.00 dated 1/30/2009

52780707 Page 3 of 3
05/13/2014 10:14AM

# EXHIBIT "A"

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE COUNTY OF PHILADELPHIA, AND COMMONWEALTH OF PENNSYLVANIA, TO WIT:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED.

SITUATE ON THE EAST SIDE OF TWENTY-NINTH STREET AT THE DISTANCE OF ONE HUNDRED AND THIRTY-FIVE FEET EIGHT INCHES NORTHWARD FROM THE NORTH SIDE OF COLUMBIA AVENUE IN THE 29TH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID TWENTY-NINTH STREET FOURTEEN FEET ELEVEN AND ONE-HALF INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH EASTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID TWENTY-NINTH STREET SIXTY-FIVE FEET TO A CERTAIN THREE FEET WIDE ALLEY LEADING NORTHWARD FROM THE SAID COLUMBIA AVENUE TO MONTGOMERY AVENUE.

TAX ID #: 324177500

BEING ALL AND THE SAME LANDS AND PREMISES CONVEYED TO CLAUDE TAYLOR AND ALBERTA MORGAN TAYLOR, HIS WIFE, AS T/E BY RALPH HELLER IN A DEED EXECUTED 12/17/1956 AND RECORDED 12/18/1956 IN BOOK 457, PAGE 342 OF THE PHILADELPHIA COUNTY, PENNSYLVANIA LAND RECORDS

[redacted]

**Effective Date: 04/01/2010**

**Page 1**

**ASSIGNMENT OF MORTGAGE**
**CORRECTIVE ASSIGNMENT TO CORRECT TYPO IN THE ASSIGNEE VERBIAGE. ORIGINALLY RECORDED 05/27/2010 DOC#: 52216460**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **World Alliance Financial Corp., WHOSE ADDRESS IS 3 HUNTINGTON QUADRANGLE SUITE 201N, MELVILLE, NY 11747, (ASSIGNOR),**, by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **REVERSE MORTGAGE SOLUTIONS, INC., WHOSE ADDRESS IS 2727 Spring Creek Drive, Spring, TX 77373, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**
Said mortgage dated 01/30/2009 in the amount of $90,000.00 made by **ALBERTA MORGAN TAYLOR** to **WORLD ALLIANCE FINANCIAL CORP.** recorded on 02/13/2009, in the Office of the Recorder of Deeds of PHILADELPHIA County, Pennsylvania, in Book , Page (or Document No.52024465)

Mortgage Premise:1719 NORTH 29TH STREET
PHILADELPHIA, PA 19121

In Witness whereof, the said Corporation has caused this instrument to be executed in its corporate name by CRYSTAL MOORE its VICE PRESIDENT and authorized signer, this 18th day of July in the year 2010
**World Alliance Financial Corp.**

**By:**____________________
**CRYSTAL MOORE VICE PRESIDENT**

WAFMA 12208500 -- FNMA.CORRECTIVE ARTA2638827 N1

[redacted]

[redacted]

52245772
**Page: 1 of 4**
08/09/2010 12:00PM

This Document Recorded
08/09/2010
12:00PM
Doc Code: A Commissioner of Records, City of Philadelphia

Doc Id: 52245772
Receipt #: 927222
Rec Fee: 168.00

[redacted]
Effective Date: 04/01/2010

ASSIGNMENT OF MORTGAGE Page 2

STATE OF FLORIDA COUNTY OF PINELLAS
On 07/18/2010, before me, CHRISTOPHER JONES the Undersigned, Notary Public, personally appeared CRYSTAL MOORE, who acknowledged him/herself to be the VICE PRESIDENT of World Alliance Financial Corp. a corporation, and that s/he as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by themselves as such corporate officers.
IN WITNESS WHEREOF, I hereunto set my hand and official seal.

CHRISTOPHER JONES Notary Public
My commission expires: 08/03/2012

Christopher Jones
Notary Public, State of Florida
Commission # DD 811078
Expires August 03, 2012
Bonded Through National Notary Assn.

I ____________, do certify that the address of the above assignee is:
REVERSE MORTGAGE SOLUTIONS, INC., WHOSE ADDRESS IS 2727 Spring Creek Drive, Spring, TX 77373, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

**Prepared by:**
**Jessica Fretwell/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
Return To:
World Alliance Financial Corp.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

[redacted]

World Alliance Financial Corp., WHOSE ADDRESS IS 3 HUNTINGTON QUADRANGLE SUITE 201N, MELVILLE, NY 11747, (ASSIGNOR),

to:

REVERSE MORTGAGE SOLUTIONS, INC., WHOSE ADDRESS IS 2727 Spring Creek Drive, Spring, TX 77373, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Mortgagor: ALBERTA MORGAN TAYLOR

When Recorded Return To:
World Alliance Financial Corp.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

All that certain lot or piece of ground situated in
Mortgage Premise: 1719 NORTH 29TH STREET
PHILADELPHIA, PA 19121
PHILADELPHIA
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said mortgage.

SEE ATTACHED EXHIBIT A

# EXHIBIT A

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE COUNTY OF PHILADELPHIA, AND COMMONWEALTH OF PENNSYLVANIA, TO WIT:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED.

SITUATE ON THE EAST SIDE OF TWENTY-NINTH STREET AT THE DISTANCE OF ONE HUNDRED AND THIRTY-FIVE FEET EIGHT INCHES NORTHWARD FROM THE NORTH SIDE OF COLUMBIA AVENUE IN THE 29TH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID TWENTY-NINTH STREET FOURTEEN FEET ELEVEN AND ONE-HALF INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH EASTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID TWENTY-NINTH STREET SIXTY-FIVE FEET TO A CERTAIN THREE FEET WIDE ALLEY LEADING NORTHWARD FROM THE SAID COLUMBIA AVENUE TO MONTGOMERY AVENUE.

TAX ID #: 324177500

BEING ALL AND THE SAME LANDS AND PREMISES CONVEYED TO CLAUDE TAYLOR AND ALBERTA MORGAN TAYLOR, HIS WIFE, AS T/E BY RALPH HELLER IN A DEED EXECUTED 12/17/1956 AND RECORDED 12/18/1956 IN BOOK 457, PAGE 342 OF THE PHILADELPHIA COUNTY, PENNSYLVANIA LAND RECORDS

# eRecording Report of Recorded Documents

Itemized Fee View

**Prepared for:** Brown & Associates
**For the period:** 05/13/2014
**Account number:** TXTGG6

[redacted]

## Documents Recorded

| NAME | TYPE | PG | ENTRY | RECORD DATE | SF | | | AMT | TOTAL | PROCESSED |
|---|---|---|---|---|---|---|---|---|---|---|
| **Philadelphia County, PA** | | | | | | | | | | |
| **May 13, 2014** | | | | | | | | | | |
| **DTT_RMS AOL_198562** | | | | | | | | | | |
| DTT_RMS AOL_198562 | *Assignment* | 3 | 52780707 | 05/13/2014 10:14 AM EDT | Submission Fee | 4.00 | Document Recording Fee | 76.00 | 80.00 | 05/13/2014 |
| | | | | | | | Philadelphia Housing Trust Fund Fee | 86.00 | 86.00 | 05/13/2014 |
| | | | | | | | County Fee | 2.00 | 2.00 | 05/13/2014 |
| | | | | | | | State Writ Tax | 0.50 | 0.50 | 05/13/2014 |
| | | | | | | | Access to Justice Fee | 23.50 | 23.50 | 05/13/2014 |
| | | | | | | | Records Improvement Fee | 15.00 | 15.00 | 05/13/2014 |
| | | | | | | | No fee | | | 05/13/2014 |
| | | | | | | ***4.00*** | | ***203.00*** | ***207.00*** | |
| | | | | | | **4.00** | | **203.00** | **207.00** | |
| **Totals for Philadelphia County, PA** | | | | | | **4.00** | | **203.00** | **207.00** | |

## Recording Fee Totals

| COUNTY | RECORD DATE | SF | AMT | |
|---|---|---|---|---|
| Philadelphia County, PA | 05/13/2014 | 4.00 | 203.00 | 207.00 |
| **Totals for Philadelphia County, PA** | | **4.00** | **203.00** | **207.00** |
| **Total of All Recording Fees** | | **4.00** | **203.00** | **207.00** |

**Document Count:** 1

**Questions Contact:**
Simplifile Support 1-800-460-5657
4844 North 300 West, Suite 202
Provo, UT 84604

eRecorded in Philadelphia PA Doc Id: 52780707
05/13/2014 10:14AM Receipt#: 1363243
Page 1 of 3 Rec Fee: $203.00
Commissioner of Records Doc Code: A
State RTT: Local RTT:

Prepared by, Recording Requested By and Return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928
[redacted]

# ASSIGNMENT OF MORTGAGE

FHA Case Number: **4418823383**

**FOR AND IN CONSIDERATION** of Ten dollars ($10.00) and other value received, the undersigned **REVERSE MORTGAGE SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS** , whose address is 2727 Spring Creek Drive, Spring, TX 77373, does hereby assign, transfer, convey, set over, and deliver to:

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT, ITS SUCCESSORS AND ASSIGNS,** forever without recourse, whose address is 451 Seventh Street. S.W., Washington, DC 20410,

The following described Mortgage
Dated: **1/30/2009**
Executed by: **ALBERTA MORGAN TAYLOR, SURVIVING SPOUSE**
Payable to: **WORLD ALLIANCE FINANCIAL CORP.**
Amount of Debt: **$90,000.00**
Recorded: **2/13/2009**
Recording Information: At Document Number **52024465**
Recording Jurisdiction: **PHILADELPHIA** County Clerk's Office, State of **PENNSYLVANIA.**

Property Address: 1719 NORTH 29TH STREET, PHILADELPHIA, PENNSYLVANIA 19121
Legal Description: SEE ATTACHED EXHIBIT "A"

Parcel: 324177500
Township: 29TH WARD CITY OF PHILADELPHIA
I certify that the address of the within named assignee is 451 Seventh Street. S.W., Washington, DC 20410

C Hart
C. Hart

Executed this May 7, 2014.

**REVERSE MORTGAGE SOLUTIONS, INC.**

Lynette Sneed
By: LYNETTE SNEED
Title: ASSISTANT VICE PRESIDENT

[redacted]

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on May 7, 2014 by LYNETTE SNEED the ASSISTANT VICE PRESIDENT of REVERSE MORTGAGE SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS, a Delaware Corporation on behalf of said corporation.

Notary Public in and for the State of Texas
Notary's Printed Name: Crystal Villasenor
My Commission Expires: 12-12-15

CRYSTAL ANN VILLASENOR
Notary Public, State of Texas
My Commission Expires
December 12, 2015

For $90,000.00 dated 1/30/2009

[redacted]

# EXHIBIT "A"

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE COUNTY OF PHILADELPHIA, AND COMMONWEALTH OF PENNSYLVANIA, TO WIT:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED.

SITUATE ON THE EAST SIDE OF TWENTY-NINTH STREET AT THE DISTANCE OF ONE HUNDRED AND THIRTY-FIVE FEET EIGHT INCHES NORTHWARD FROM THE NORTH SIDE OF COLUMBIA AVENUE IN THE 29TH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID TWENTY-NINTH STREET FOURTEEN FEET ELEVEN AND ONE-HALF INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH EASTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID TWENTY-NINTH STREET SIXTY-FIVE FEET TO A CERTAIN THREE FEET WIDE ALLEY LEADING NORTHWARD FROM THE SAID COLUMBIA AVENUE TO MONTGOMERY AVENUE.

TAX ID #: 324177500

BEING ALL AND THE SAME LANDS AND PREMISES CONVEYED TO CLAUDE TAYLOR AND ALBERTA MORGAN TAYLOR, HIS WIFE, AS T/E BY RALPH HELLER IN A DEED EXECUTED 12/17/1956 AND RECORDED 12/18/1956 IN BOOK 457, PAGE 342 OF THE PHILADELPHIA COUNTY, PENNSYLVANIA LAND RECORDS

This document has been electronically recorded
on 5.13.14 at 10:14 AM/PM.
BK - PG - and/or
Instrument 52780707.
This document has been submitted by
Brown & Associates
2316 Southmore Ave Pasadena TX 77502

Prepared by, Recording Requested By and Return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928
[redacted]

# ASSIGNMENT OF MORTGAGE

FHA Case Numbe[redacted]

**FOR AND IN CONSIDERATION** of Ten dollars ($10.00) and other value received, the undersigned **REVERSE MORTGAGE SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS** , whose address is 2727 Spring Creek Drive, Spring, TX 77373, does hereby assign, transfer, convey, set over, and deliver to:

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT, ITS SUCCESSORS AND ASSIGNS**, forever without recourse, whose address is 451 Seventh Street. S.W., Washington, DC 20410,

The following described Mortgage
Dated: **1/30/2009**
Executed by: **ALBERTA MORGAN TAYLOR, SURVIVING SPOUSE**
Payable to: **WORLD ALLIANCE FINANCIAL CORP.**
Amount of Debt: **$90,000.00**
Recorded: **2/13/2009**
Recording Information: At Document Number **52024465**
Recording Jurisdiction: **PHILADELPHIA** County Clerk's Office, State of **PENNSYLVANIA**.

Property Address: 1719 NORTH 29TH STREET, PHILADELPHIA, PENNSYLVANIA 19121
Legal Description: SEE ATTACHED EXHIBIT "A"

Parcel: 324177500
Township: 29TH WARD CITY OF PHILADELPHIA
I certify that the address of the within named assignee is 451 Seventh Street. S.W., Washington, DC 20410

C Hart
C. Hart

Executed this May 7, 2014.

**REVERSE MORTGAGE SOLUTIONS, INC.**

Lynette Sneed
By: LYNETTE SNEED
Title: ASSISTANT VICE PRESIDENT

STATE OF TEXAS [redacted]

COUNTY OF HARRIS

This instrument was acknowledged before me on May 7, 2014 by LYNETTE SNEED the ASSISTANT VICE PRESIDENT of REVERSE MORTGAGE SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS, a Delaware Corporation on behalf of said corporation.

____________________________________
Notary Public in and for the State of Texas
Notary's Printed Name: Crystal Villasenor
My Commission Expires: 12-12-15

CRYSTAL ANN VILLASENOR
Notary Public, State of Texas
My Commission Expires
December 12, 2015

For $90,000.00 dated 1/30/2009

7 of 7

# EXHIBIT "A"

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE COUNTY OF PHILADELPHIA, AND COMMONWEALTH OF PENNSYLVANIA, TO WIT:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED.

SITUATE ON THE EAST SIDE OF TWENTY-NINTH STREET AT THE DISTANCE OF ONE HUNDRED AND THIRTY-FIVE FEET EIGHT INCHES NORTHWARD FROM THE NORTH SIDE OF COLUMBIA AVENUE IN THE 29TH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID TWENTY-NINTH STREET FOURTEEN FEET ELEVEN AND ONE-HALF INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH EASTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID TWENTY-NINTH STREET SIXTY-FIVE FEET TO A CERTAIN THREE FEET WIDE ALLEY LEADING NORTHWARD FROM THE SAID COLUMBIA AVENUE TO MONTGOMERY AVENUE.

TAX ID #: 324177500

BEING ALL AND THE SAME LANDS AND PREMISES CONVEYED TO CLAUDE TAYLOR AND ALBERTA MORGAN TAYLOR, HIS WIFE, AS T/E BY RALPH HELLER IN A DEED EXECUTED 12/17/1956 AND RECORDED 12/18/1956 IN BOOK 457, PAGE 342 OF THE PHILADELPHIA COUNTY, PENNSYLVANIA LAND RECORDS

eRecorded in Philadelphia PA Doc Id: 54475643
10/06/2025 12:52 PM Page 1 of 2 Rec Fee: $245.75
Receipt#: 25-84457
Records Department Doc Code: A

# ASSIGNMENT OF MORTGAGE

**Prepared By And**
**After Recording Return To:**

**DocSolutionUSA**

DocSolutionUSA, LLC, dba DocSolution, Inc.
2316 Southmore
Pasadena, TX 77502
713-941-4928

**DocSolutionUSA, LLC, d/b/a DocSolution, Inc. did not prepare a title search of the Property described in the document below. The Preparer of this document makes no representation as to the status and validity of, including, but not limited to, the title, loan history, boundary survey, property use, or zoning regulations of the Property assigned, transferred, conveyed, released, or any other disposition of the Property. Information herein was provided to preparer by Grantor/Grantee and/or their Agent.**

Client Id: LHA/ROL

[redacted]

FHA Case Number: [redacted]

***FOR VALUE RECEIVED*, SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY AND THROUGH ITS ATTORNEY IN FACT, ROCKTOP TECHNOLOGIES, LLC, ITS SUCCESSORS AND ASSIGNS**, whose address is 451 7th Street, S.W., Washington, DC 20410, does hereby assign and transfer to **Wilmington Savings Fund Society, FSB as Owner Trustee of CFS15 Grantor Trust** whose address is **c/o Carrington Mortgage Services, LLC 1600 South Douglass Road, Suite 110, Anaheim, CA 92806, ITS SUCCESSORS AND ASSIGNS**,, all its right, title and interest in and to the described Mortgage **together with certain note(s) described with all interest, all liens, any rights due or to become due thereon**, executed by **ALBERTA MORGAN TAYLOR, SURVIVING SPOUSE** to **WORLD ALLIANCE FINANCIAL CORP.** for **$90,000.00** dated **1/30/2009** of record on **2/13/2009** at Document Number **52024465**, in the **PHILADELPHIA** County Recorder's and/or Clerk's Office, State of **Pennsylvania**.

Property Address: 1719 NORTH 29TH ST, PHILADELPHIA, PA 19121

Parcel: 324177500
Township: 29th Ward of the City og Philadelphia

I certify that the address of the within named assignee is **Wilmington Savings Fund Society, FSB as Owner Trustee of CFS15 Grantor Trust** whose address is **c/o Carrington Mortgage Services, LLC 1600 South Douglass Road, Suite 110, Anaheim, CA 92806.**

Executed this 9-18-2025

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY AND THROUGH ITS ATTORNEY IN FACT, ROCKTOP TECHNOLOGIES, LLC**

By: John Zarrillo
Title: AUTHORIZED AGENT

Power of Attorney recorded: 10/1/2025 Inst.#54474105

## ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF DALLAS

Before me, the undersigned, a Notary Public on this day personally appeared John Zarrillo, AUTHORIZED AGENT, known to me (or proved to me on the oath of ________), to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said Rocktop Technologies, LLC as attorney in fact for Secretary of Housing and Urban Development, a corporation, and that he/she had executed the same as the act of such corporation for the purpose and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office, this 18th day of September, A.D. 2025

NOTARY PUBLIC, STATE OF TEXAS
NOTARY PRINTED NAME: Theresa Maynard-Eagle

For $90,000.00 dated 1/30/2009

THERESA MAYNARD-EAGLE
NOTARY PUBLIC
STATE OF TEXAS
ID 134470188
EXP. 07-24-2027